IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAMELA D. WILLIAMS, et al. | : | CASE NO. CASE NO. 2:10-cv-00394 |
| | : | |
| Plaintiffs | : | Judge James Graham |
| | : | Magistrate Judge Terrence Kemp |
| v. | : | |
| | : | **DEFENDANTS NEW DAY FARMS,** |
| NEW DAY FARMS, LLC, et al. | : | **LLC AND DAYBREAK FOODS,** |
| | : | **INC. MOTION TO DISMISS** |
| Defendants. | : | **PURSUANT TO RULE 12(b)(6)** |
| | : | **OR IN THE ALTERNATIVE FOR** |
| | : | **SUMMARY JUDGMENT** |
| | : | **PURSUANT TO RULE 56** |
| | : | |
| | : | (ORAL ARGUMENT REQUESTED) |

Now comes Defendants New Day Farms, LLC ("New Day") and Daybreak Foods, Inc.

("Daybreak") and, pursuant to Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure,

moves the Court to dismiss the complaint of Plaintiffs Pamela Williams and the Northwest

Neighborhood Alliance (collectively the "NNA").  Neither New Day nor Daybreak conspired with

anyone to violate the NNA's First Amendment Rights.  Because all of the factual and legal issues

alleged in the complaint already have been subject to extensive discovery in the case of New Day v.

Board of Trustees of York Township, Ohio, Case No. 2:08-cv-01107 ("Fire Code Action"), the

Court can and should summarily dismiss the complaint.[1]

## I.    INTRODUCTION

In its complaint, the NNA mischaracterizes New Day's meritorious Fire Code Action that

protected and preserved its constitutional rights (which the NNA's friends and neighbors in York

Township Government flagrantly violated) as Strategic Litigation Against Public Participation

---

[1] For purposes of this motion, references to document numbers ("Doc.__") are those numbers contained in the Fire Code Action and references to transcript pages ("T.p. __") are to deposition transcript pages filed in the Fire Code Action.  In his deposition, NNA co-founder and Liberty Township Trustee Dave Thornton testified that the NNA and Pam Williams are one and the same to him.  (Doc. 83: Thornton T.p. 32-33).

("SLAPP").  However, Ohio does not recognize a SLAPP cause of action ("SLAPP").  Tri-County Concrete Co. v. Uffman-Kirsch, 2000 Ohio App. LEXIS 4749 (October 12, 2000) ("The Ohio General Assembly has not yet chosen to enact anti-SLAPP legislation, and this court is constrained from recognizing such an action at this time.").  Thus, in reality, the NNA's complaint invites the Court to usurp the role of the Ohio General Assembly and legislate a new cause of action under Ohio law. The Court should reject the invitation and dismiss the complaint.

### A.      Rule 12(b)(6) and Rule 56 Standards

As the NNA knows well, the Supreme Court has held that in order to state a claim for relief and survive a Rule 12(b)(6) motion to dismiss, the NNA must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." Ashcroft v. Iqbal, 120 S.Ct. 1937, 1949 (2009).  The NNA clearly has not done so.  Rather, the NNA's complaint is compromised of "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" and "unadorned, the defendant-unlawfully-harmed me accusation[s]." Id.

The NNA's complaint does not contain facts sufficient to "state a claim that is plausible on its face." Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 129 S.Ct. at 1949.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Id.  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.  Where the facts pleaded do not permit the court to infer more than the mere

possibility of misconduct, the complaint has not shown that the pleader is entitled to relief as required under Fed.R.Civ.P. 8(a)(2); Rauch v. Day & Night Mfg. Co., 576 F.2d 697 (6th Cir. 1978).

Rule 12(d) of the Federal Rules of Civil Procedure permits the Court to convert this motion to dismiss to a motion for summary judgment if the Court considers matters outside the pleadings. Fed.R.Civ.P. 12(d).  In the event the Court does so, this case is well-suited to conversion as the NNA already has completed all the discovery that is available in the Fire Code Action.  Thus, if the Court considers matters outside the pleadings, the Court should give the parties notice and convert this motion to a motion of for summary judgment.  See Wysocki v. International Business Machines, Inc., 2010 U.S. App. LEXIS 12265 (6th Cir. June 16, 2010).

### B.      Statement of Facts

According to the NNA's artfully pled complaint, the NNA became "politically active" in 2007 when its officers learned that a new egg farm, Hi-Q Egg Products ("Hi-Q"), might seek to locate in York Township.  (Complaint ¶ 14-18).  Pam Williams formed the NNA to oppose Hi-Q locating in York Township.  Id.  Pam Williams and the NNA set up a web site and she put a "No More Chicken Factories" sign in her yard.  Id. at ¶ 18.  The NNA's web site and Mrs. Williams' sign remained in place at all times relevant in this matter and the NNA does not plead, nor could it, that either the web site or the sign was ever physically seized by New Day or Daybreak.

In becoming politically active, Mrs. Williams was hardly alone.  Rather, her husband, Roger, and three other families (Dave & Jean Thornton, Jim & Twyla Elliott, and Merill & Bev Staley) helped her form the NNA.  (DX-1: Doc. 77:  Williams T.p. 186-188).  Her daughter, Caroline Williams, a licensed attorney with Jones Day, provided an immense amount of legal advice free of charge.  (DX-2; Doc. 77: Williams T.p. 258-60).  Finally, most importantly, Mrs. Williams "modeled" her activism on that of Bill Davis, who told her he had stopped Hi-Q from locating in

Logan County, Ohio, and that the NNA "should consider what we are facing as 'War' and act accordingly."  (DX-3; Doc. 77: Williams T.p. 101-107).  To emphasize his point, Mr. Davis gave Mrs. Williams a photograph of his son wielding a M-60 machine gun with the ominous note: "Borrow my son if need be."  (DX-4: Williams T.p. 318-320).

As the NNA knew, however, Ohio law restricted who the NNA could genuinely petition as part of the campaign.  As the minutes of the York Township Trustees' meetings stated, from the date of the NNA's formation, the NNA knew that the Ohio Department of Agriculture ("ODA"), not York Township, had exclusive authority to permit and regulate egg farms.  (DX-5).

On August 7, 2008, Hi-Q organized and held a *private* informational meeting at Karen's Event Center in Marysville.  Complaint ¶ 37 & 63.  The NNA videotaped the meeting.  Id. ¶ 40.  The NNA does not plead that New Day or any governmental authority organized this private meeting.  Quite simply, Hi-Q alone held this private meeting that many people, including Pam Williams herself, attended.  Id. ¶ 38.  In August of 2008, following Hi-Q's private meeting, ODA inspector Chris Rodabaugh investigated several complaints lodged by Mrs. Williams and others in the York Township area and found nearly all of the complaints to be false.  Id. ¶¶ 60-64, 66-68, 71-74.[2]

Later, in the fall of 2008, the ODA scheduled and held a *public hearing* on December 17, 2008 on Hi-Q's permit application to install a new egg farm in York Township.  Prior to the meeting, New Day's Mark Meyer attempted to send an e-mail to the ODA's Kevin Elder with suggestions for the public hearing *if* the hearing was held at Karen's Event Center.  Id. ¶ 47 and Exhibit 1.  However,

---

[2] The NNA plays fast and loose with the dates of the complaints in order to artfully plead its complaint.  As the NNA knows, odor complaints that Mr. Rodabaugh and the ODA found to be legitimate were not lodged until April of 2009, well after the Hi-Q private meeting.  Complaint ¶ 69 and Exhibit 4.  Simply because the ODA found odor complaints to be legitimate in April of 2009 does not in any way suggest that the ODA's conclusion that the August of 2008 complaints were false was drawn in any manner other than in good faith.  That fact that Mr. Rodabaugh found some complaints to be false and some to be true does not give rise to the inference that Mr. Rodabaugh and anyone at New Day were conspiring to violate the NNA's rights.  Rather, the only plausible inference that can be drawn from Mr. Rodabaugh concluding that some odor complaints were false and some were true is that Mr. Rodabaugh investigated all the complaints neutrally and impartially, not that he is engaged in an illegal conspiracy.  The NNA's implication to the contrary is utterly implausible.

4

Mr. Meyer actually sent the e-mail to himself, not Mr. Elder. See Exhibit 1. Moreover, when Mr. Rodabaugh received Mr. Meyer's e-mail, Mr. Rodabaugh completely ignored Mr. Meyer's suggestions and the ODA held the public hearing at Marysville High School. As the transcript of the ODA's public hearing demonstrates (DX-6), Mrs. Williams and many other persons spoke at the hearing, which was held after New Day filed the Fire Code Action. NNA does not plead any facts, nor could they, that any person was denied the opportunity to speak at the ODA's public hearing.

Shortly after the NNA was formed, New Day began renovating an existing egg farm in York Township that it acquired during the summer of 2007. Until Hi-Q's private meeting on August 7, 2008, New Day's interaction with the NNA was limited. On February 19, 2008, New Day's Steve Bliesner informed Pam Williams at a York Township Trustees meeting that New Day was renovating its egg farm. Neither Mrs. Williams or the Township Trustees expressed any concern about the renovation, but Mrs. Williams inquired if New Day had a relationship with Hi-Q. (DX-7).

As Mr. Bliesner testified, Mrs. Williams "totally dominated" the Trustees' meeting he attended. (Doc. 91: Bliesner T.p. 191-192). Further, Mr. Bliesner testified that Trustee John Oates said that "he would love to talk to me, but he was afraid he would say something he's not supposed to." (Id. at 200 & 310). Mr. Bliesner observed Mrs. Williams directing the Trustees with winks and nods. (Id. at 200-01). Mr. Bliesner testified that Mrs. Williams told him that he was a nice guy but in the wrong place at the wrong time and she was going to make an example of New Day. (Id. at 199). The York Township Fiscal Officer, Tim Goodwin, stated to Mrs. Williams in a secret e-mail that York Township officials were "thinking of an angle for you folks who are allowed to have an opinion (us elected officials need to stay neutral you know)." (DX-8). Mr. Brake testified that he found the special treatment and support that fellow Trustees Judy Christian and John Oates gave to the NNA to be inappropriate. (Doc. 63: Brake T.p. 82-84 and 95-96).

Subsequently, the York Township Trustees purported to adopt a fire code.  Mr. Brake voted against the fire code and state "he hopes this fire code is never used against someone in the future." The fire code passed by a 2-1 vote on the votes of Ms. Christian and Mr. Oates.  On July 15, 2008 (prior to the Hi-Q private meeting), the York Township Fiscal Officer Tim Goodwin indicated to New Day that the fire code would not apply to its renovation.  (DX-9; Doc. 91: Bliesner T.p. 182).

However, after the Hi-Q private meeting, the York Township Trustees, through the Union County Prosecutor, sent New Day a notice of violation/cease-and-desist letter under the fire code. (DX-10).  When New Day received the notice of violation/cease-and-desist letter, Mr. Bliesner went to see the York Township Fire Official, Don Detrick, who told Mr. Bliesner that he did not see the need for the fire code and that "I just do what I am told to do.  They pay me."  (DX-11: Bliesner Affidavit).  New Day also responded to the Union County Prosecutor, denied it was in violation, and asked for a meeting.  (DX-12).  The Union County Prosecutor refused to meet.  (DX-13).  Rather, the NNA and the Union County Prosecutor ran an advertisement in the local newspaper entitled "No More Chickens" in which the NNA stated, "Local farmers are part of Union County and are good neighbors.  There are legitimate concerns that out of state corporations, which lack those close ties to the community, may not be."  (DX-14; Doc. 41: 1st Amend. Compl. ¶¶ 19 and 24).

The York Township officials' dysfunctional behavior left New Day with no choice but file the Fire Code Action to protect its property rights.  (Doc. 41: 1st Amend. Compl. incorporated by reference herein as if fully restated).  In doing so, New Day named the NNA because it appeared to New Day that the York Township officials and the NNA were acting jointly.  Indeed, the "No More Chickens" advertisement was a joint advertisement of the NNA and the officials.  While the facts dictated that New Day had to name the NNA in the action, New Day did not seek any monetary damages from the NNA.  The NNA did not incur any attorney's fees to defend the action as Mrs.

Williams' daughter's firm took up the defense for free.  (Doc. 91: Bliesner T.p. 274).  Quite simply, the NNA did not incur any damages from New Day's actions and was not threatened with  damages.

Moreover, New Day's action did not have any impact on Mrs. Williams or the NNA's rights to petition their government.  Mrs. Williams maintained her web site and yard sign throughout the action.  Within weeks after the action was filed, Mrs. Williams sent Bill Davis an e-mail that told Mr. Davis the NNA had been sued and requested Mr. Davis to comment on behalf of the NNA at the public hearing on Hi-Q's permit application and testified at the hearing herself.  (Doc. 77: Williams T.p. 295-300).  Mrs. Williams' e-mail does not contain a shred of emotional distress whatsoever, but rather states "this should be interesting."  (Id.).  Mr. Davis responded: "Corporate terror at its best again.  What is the next step against these Minnesota owners?"  (Id.)

Pam Williams also sent NNA members "talking points" for the ODA's Hi-Q public hearing. (DX-15).  Under questioning from the NNA's own counsel, NNA co-founder Dave Thornton succinctly stated that New Day's action did not impact the NNA at all:

> Q:    What impact, if any, has this lawsuit had on NNA meetings?
> A:    I don't think it's had any.
> Q:    What about attendance?
> A:    It's pretty constant.
> Q:    Has there been any talk about any concern of being named in the lawsuit beyond Pam Williams?
> A:    No (Doc. 83: Thornton T.p. 151-152).

In January of 2009, Mrs. Williams communicated with  Mr. Thornton and the Union County Commissioners about road issues related to the Hi-Q project.  (Id. at 168-174).  In March of 2009, Mrs. Williams participated in the Ohio Environmental Council's Lobby Day in Columbus, Ohio, and spoke with state representatives about issues relating to egg farms.  (Id. at 177-180).  In June of 2009, Mr. Thornton and the NNA's lobbyist met with state representatives in Columbus about

potential legislation.  (Id. at 180-183).  At all of these times, this case was pending, and it did not in any way inhibit the NNA from petitioning their government or engaging in free speech.

In November of 2009, this Court dismissed New Day's claims against the NNA.  (Doc. 57).  However, in December of 2009, New Day prevailed on its claims when it reached a settlement with the York Township Defendants pursuant to which New Day is not required to comply with the fire code and received payment of $175,000 as compensation for being forced to endure the sham administrative process.  (DX-16: Settlement Agreement).  Thereafter, the NNA filed an motion for attorney's fees with this Court and New Day opposed the motion and appealed the dismissal of the NNA to the Sixth Circuit Court of Appeals.  As of this writing, that appeal is pending and thus the NNA still has not yet prevailed in the Fire Code Action that saved New Day's constitutionally protected property interest in its egg farm.

Throughout all of these proceedings, New Day has never, ever expressed any malice toward Mrs. Williams or anyone else in the NNA and the NNA's complaint does not contain one fact from which malice could be inferred.  Rather, the NNA's complaint merely states facts which demonstrate New Day and Mr. Rodabaugh disagreed with the NNA's position.  On the other hand, the NNA itself clearly was driven by malice.  Mrs. Williams agreed that she "modeled" her actions on Mr. Davis' campaign even though she found some of his e-mails that emphasized reckless and malicious allegations of "MEXICAN ILLEGALS" and "Spanish speaking children in school" to be "offensive."  (Doc. 77: Williams T.p. 311: DX-17).  Her husband, Mr. Williams, referred to egg farms as "a national disgrace, with their unbridled ability to move into an area and instantly turn it into a third-world country."  (Doc. 41: 1st Amend. Compl. ¶ 105).  With regard to the NNA and the only neutral Trustee, Mike Brake, NNA co-founder and secretary Twyla Elliott wrote, "SOB's.  I hate 'em all.  Wish I had balls…. Because Mike Brake sure doesn't have any!"  (DX-18; DX-19).

Even if the Court disregards the NNA's shocking displays of malice, accepts the limited, artfully pled facts of the complaint as true, and views the complaint in a light most favorable to the NNA, the Court still should dismiss the complaint.  At most, the NNA has alleged that Daybreak and New Day and the ODA's Mr. Rodabaugh substantively disagree with the NNA's positions.  The First Amendment protects their right to petition the federal court's for protection, to discuss agricultural issues and disagree with the NNA, and to attend Hi-Q's private meeting.  Therefore, the NNA clearly has failed to state a claim upon which relief can be granted and the complaint should be dismissed.

## II.    ARGUMENT

### A.    The NNA's Complaint Fails to State a Claim Against Daybreak.

As the NNA knows, Daybreak is the parent of New Day.  Under Ohio law, "a parent corporation is not liable for the actions of its subsidiary, even if the subsidiary is wholly owned." Starner v. Garner Indus, 143 Ohio App. 3d 461, 468 (10th Dist. 2001).  The NNA has not pled any facts that would justify piercing the corporate veil, nor could it.  Thus, for this reason and the reasons applicable to New Day, the Court should dismiss Daybreak.

### B.    The NNA's Complaint Fails to State a Claim Against New Day

#### 1.    The Noerr-Pennington Doctrine Provides New Day a Complete Defense

New Day's right to bring an action in federal court against the NNA is protected by Noerr-Pennington immunity.  Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., 508 U.S. 49 (1993).  New Day's action against the NNA was well-grounded in fact and law and neither frivolous, objectively baseless, nor motivated by an improper subjective motivation.[3]

---

[3] See American Postal Workers Union, Local 96 v. City of Memphis, 361 F.3d 898 (6th Cir. 2004); Volunteer Med. Clinic, Inc. v. Operation Rescue, 948 F.2d 218 (6th Cir. 1991); Farm Labor Organizing Committee v. Ohio State Hwy. Patrol, 308 F.3d 523 (6th Cir. 2002); Lightborne Publishing, Inc. v. Citizens for Community Values, 2009 U.S. Dist. LEXIS 28098 (S.D. Ohio March 20, 2009); Cutting v. Muzzey, 724 F.2d 259 (1st Cir. 1984); LeBlanc-Sternberg v. Fletcher, 781 F. Supp. 261 (S.D.N.Y. 1991), aff'd in part, rev'd in part, 67 F.3d 412 (2nd Cir. 1995).

Respectfully, the Court erroneously dismissed New Day's complaint against the NNA--which alleged that the NNA knew that York Township had no authority to regulate New Day--on the basis of the Noerr-Pennington Doctrine.  See MCI Communications Corp. v. AT&T, 708 F.2d 1081, 1156 (7th Cir. 1982) ("There can be no genuine attempt to petition the government when the petitioners know in advance that the governmental body lacks the authority to take the action desired."). Accord City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 372 (1991)(citing Stump v. Sparkman, 435 U.S. 349 (1978)(holding even judges are not immune when acting in the "clear absence of jurisdiction")).  New Day has appealed the dismissal of the NNA to the Sixth Circuit Court of Appeals and that court's decision is pending.

However, even if the Court correctly dismissed the NNA on the basis of Noerr-Pennington immunity, the Sixth Circuit clearly has held that such immunity does not render New Day's complaint objectively baseless or frivolous.  Northern Kentucky Right to Life Committee, Inc. v. Kentucky Registry of Election Finance, 1998 U.S. App. LEXIS 495 (6th Cir. 1998).  The Sixth Circuit consistently has refused to find a case frivolous merely because a defendant successfully asserts an immunity defense.  Id.  Accord Schropshire v. Smith, 1995 U.S. App. LEXIS 5788 (6th Cir. March 20, 1995)(holding qualified immunity defense did not render complaint frivolous).

Furthermore, the NNA's complaint does not identify any facts that suggest New Day acted pursuant to any improper subjective motivation.  It is undisputed that at all times relevant, New Day possessed a vested constitutional property interest in renovating and operating its egg farm.[4]  The NNA ignores this interest and suggests a wholly implausible motivation, i.e., that New Day wanted

---

[4] See, e.g., Danis Clarkco Landfill Co. v. Trustees of German Twp., 1997 U.S. Dist. LEXIS 21081 (S.D. Ohio April 16, 1997); Abdalla's Tavern v. Dept. of Commerce, 2003 Ohio App. LEXIS 2949 (7th Dist. June 20, 2003) ("Without proof that Appellee's tavern constituted a nuisance, Appellee cannot be required to undergo expensive improvements to come into compliance with the current Fire Code.  This conclusion is not based on the vagueness of the Ohio Administrative Code, but rather, on other constitutional protections, such as due process rights…").

to silence the NNA.  But Mr. Bliesner testified at deposition that he never heard anyone at New Day say they wanted to silence the NNA and the NNA's complaint does not reference a single document or line of deposition testimony that would refute Mr. Bliesner.[5]  (Doc. 91: Bliesnter T.p. 269-270).  Thus, the NNA's alleged alternative motivation that New Day wanted to silence the NNA is a conclusion without factual basis that the Court should ignore on a motion to dismiss.

The NNA's real problem is and always has been that it wants absolute rights for itself and no rights for New Day or others with whom it disagrees.  But New Day has rights.[6]  New Day has a vested, constitutional property right to operate its egg farm as well as the First Amendment right to petition its government in a non-frivolous lawsuit.  On the other hand, the NNA's right to speech and petition is not absolute as the NNA would have this Court hold.  The NNA does not have a constitutional right to videotape meetings, such as the Hi-Q private meeting, or harass private, law-abiding companies such as New Day with a sham fire code and sham administrative process.[7]  Finally, as the NNA knows, a successful action such as New Day's against York Township, can never be objectively baseless or frivolous.  Professional Real Estate Investors, supra.

For all of these reasons, the Noerr-Pennington Doctrine protects all of New Day's actions alleged in the NNA's complaint and this Court should dismiss the complaint.

---

[5] The NNA's allegations are based solely on the failed attempt of a New Day employee, Mr. Meyer (who is not a party to this case), to influence the ODA's organization of the public hearing on Hi-Q's permit application.  However, Mr. Meyer's bumbling attempts do not constitute facts upon which a claim can be based because the ODA clearly rejected Mr. Meyer's suggestions and because New Day is not responsible for the intentional actions of its employee, Mr. Meyer, that were not in furtherance of New Day's business.  See, e.g., Cyrus v. Home Depot USA, Inc., 2008 Ohio App. LEXIS 3607 (12th Dist. August 25, 2008).

[6] Recently, the U.S. Supreme Court firmly reiterated that the First Amendment applies to corporations and that the relative "financial ability" of a corporation or individual is irrelevant in analyzing First Amendment protection.  Citizen's United v. Federal Election Commission, 558 U.S. ___ (2010).

[7] See Lindell v. Riddle, 266 F.3d 542, 549-50 (6th Cir. 2001)(holding altercation over video equipment at a public meeting did not violate plaintiff's first amendment rights); Lowery v. Jefferson County Bd. of Educ., 586 F.3d 427, 435 (6th Cir. 2009)(holding "harassing speech" that "threatens illegal acts" at public meeting is not protected by First Amendment); California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972)(holding harassing petitioning is subject to Noerr-Pennington sham exception and not protected by First Amendment).

2.     The NNA's Complaint Fails to State A Claim for Malicious Prosecution

Under Ohio law, claims for malicious prosecution are disfavored.  Wallace v. Noel, 2009 Ohio 6984 (6th Dist. December 31, 2009).  In order to state a claim for civil malicious prosecution, the NNA must show:  (1) the malicious institution of prior proceedings against the plaintiff by defendant; (2) lack of probable cause for filing of the prior lawsuit; (3) termination of the prior proceedings in plaintiff's favor; and (4) seizure of plaintiff's person or property during the course of the prior proceedings.  Robb v. Chagrin Lagoons Yacht Club, Inc., 75 Ohio St. 3d 264 (1996).  Ohio courts have held that in a civil malicious prosecution action, the "requirement of an arrest of a person or seizure of property … is necessary, as a matter of public policy, to dissuade the multiplicity of counter-suits that could occur in the absence of such a requirement."  Garnett v. Meckler, 1990 Ohio App. LEXIS 1306 (8th Dist. March 29, 1990).  Ohio courts have repeatedly held that merely defending a lawsuit does not satisfy the seizure requirement.[8]

This is a text book example of why the seizure requirement is good public policy.  Here, the NNA collaterally attacked a peaceful, law-abiding company, New Day, that was new to the state. New Day defended itself and saved its vested, constitutional property interests from being destroyed in the attack.  Now, the NNA seeks to attack New Day again and punish New Day for its defense strategy by seeking punitive damages even though the NNA incurred no actual damages.

In addition, the NNA has failed to plead facts that would satisfy any of the other requirements for a malicious prosecution claim.  The NNA has not asserted any facts that show New Day ever acted with malice; rather, all of the malice is on the side of the NNA.  As demonstrated by its success against the York Township Defendants, who New Day alleged conspired with the NNA,

---

[8] Id.  See also Kiraly v. Stevens, 1987 Ohio App. LEXIS 7345 (9th Dist. June 3, 1987); Pritchard v. Algis Servaitis & Associates, 2006 App. LEXIS 3038 (8th Dist. June 22, 2006); Moss v. Blake, 1982 Ohio App. LEXIS 11667 (8th Dist. March 4, 1982); Vagas v. City of Hudson, 2009 Ohio App. LEXIS 5714 (9th Dist. December 23, 2009); M.A.J. v. Jackson, 1987 Ohio App. LEXIS 8596 (4th Dist. September 2, 1987).

New Day had probable cause to bring its action against the NNA.  Finally, the prior proceedings have not terminated in the NNA's favor as New Day's appeal is still pending.

For all of these reasons, the NNA has failed to state a claim for malicious prosecution and its claim should be dismissed.

3.    The NNA's Complaint Fails to State a Claim for Abuse of Process

The Ohio Supreme Court has held that there is no liability for abuse of process "where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions."  Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P., 68 Ohio St. 3d 294 (1994).  The Supreme Court also has held that "abuse of process connotes the use of process properly initiated for improper purposes."  Robb v. Chagrin Lagoons Yacht Club, Inc., 75 Ohio St. 3d 264 (1996).  "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by use of the process as a threat or a club."  Id.

The Yacht Club case is the seminal abuse of process case in Ohio.  In the Yacht Club case, two vexatious members of the yacht club brought three lawsuits against the yacht club and all the actions were dismissed.  The yacht club then sought to take disciplinary action against the vexatious members pursuant to a vote of the membership.  While the vote was still pending, the vexatious members filed a fourth lawsuit against the yacht club and stated the lawsuit would be dropped if the members voted against taking disciplinary action.  The Supreme Court held that under these circumstances the fourth lawsuit was an abuse of process.

The facts in this case are quite different.  New Day filed its action against the NNA and the York Township Defendants only after the fire code had been approved by a 2-1 vote and the defendants jointly sought to impose the York Township Fire Code upon New Day through the NNA

13

sponsored Union County Prosecutor.  At no time did New Day seek to influence the Trustees' vote, offer to dismiss its action in exchange for the NNA giving up its opposition to Hi-Q, or attempt to attain any other "collateral advantage." Likewise, the NNA's complaint does not identify any facts that would support the inference that New Day sought to obtain a "collateral advantage."  New Day did not even seek any payment of money damages or surrender of property in the action itself.

New Day's allegations in its action that the NNA conspired to discriminate against New Day because New Day employs Hispanic workers is not an "improper purpose."  Both the U.S. Supreme Court and the Sixth Circuit have recognized as a matter of law that illegal "discrimination is inherently a matter of public concern."[9]  Perry v. McGinnis, 209 F.3d 597, 608 (6th Cir. 2007).  In addition, the fact that the NNA had to engage in discovery in the case does create an improper purpose.  See Warner v. Greenbaum, Doll & McDonald, 2004 U.S. App. LEXIS 13774 (6th Cir. June 23, 2004) (holding environmental activists who were compelled to participate in discovery failed to state a claim).  Quite simply, the NNA's complaint utterly fails to state any facts that could be construed as an "improper purpose."[10]  Thus, the NNA's complaint should be dismissed.  Broadnax v. Greene Credit Service, 118 Ohio App. 3d 881, 890-91 (2nd Dist. 1987).

---

[9] It should be noted that the NNA opposed New Day's filing an amended complaint in the Fire Code Action on the basis that New Day's allegations of national origin discrimination were scandalous.  (Doc. No. 37).  The Magistrate Judge rejected the NNA's characterization of the allegations as scandalous and permitted the filing of the first amended complaint. (Doc. No. 40).  The NNA did not appeal the Magistrate Judge's decision and is bound by it.

[10] In his dissent in Westmac v. Smith, 797 F.2d 313, 321 (6th Cir. 1986), Judge Merritt correctly noted that the Restatement (Second) of Torts requires the NNA to plead that New Day engaged in an improper affirmative act in furtherance of an illegitimate purpose in order to state a claim for abuse of process. Judge Merritt used the following illustration from the Restatement:

A is a dangerously insane person.  B, her son, instigates lunacy proceedings against her, seeking to have her confined for the protection of herself and others.  His motive in doing so is to succeed to the control of her property after she is committed.  This is not abuse of process.

In this case, New Day merely instituted an action against the NNA to protect its own vested, constitutional property rights.  If B could not be liable for abuse of process for initiating an action in order to take control of A's property, then certainly New Day cannot be liable for instituting an action to protect its own property.

3.    The NNA's Complaint Fails to State a Claim under Section 1983

The NNA's claim under section 1983 fails because it is barred by the Noerr-Pennington Doctrine and because New Day has failed to state a claim for malicious prosecution or abuse of process. See Broadnax, supra. The NNA's claim also fails because the NNA has failed to allege any facts that would support an inference that anyone at New Day conspired with the ODA or otherwise engaged in any state action or acted under the color of state law.

It is well-established that "[t]he guarantees of free speech and equal protection guard only against encroachment by the government and erect no shield against merely private conduct." Wilcher v. City of Akron, 2005 U.S. Dist. LEXIS 9470 (N.D. Ohio May 13, 2005). Here, the NNA has alleged nothing but private conduct. The August 7, 2008, Hi-Q meeting, which Mrs. Williams videotaped, was a purely private meeting that was organized exclusively by Hi-Q and held at Karen's Event Center. The December 17, 2008, ODA public hearing on Hi-Q's permit application, at which Mrs. Williams and NNA co-founders Dave and Jean Thornton spoke, was organized exclusively by the ODA and held at Marysville High School. In organizing the public hearing, it is indisputable that the ODA completely ignored and rejected Mr. Meyer's suggestions on how to organize the meeting if it were held at Karen's Event Center, which it was not.

The NNA's complaint contains no facts which give rise to an inference that New Day ever acted under the color of state law to deprive the NNA of its right to freedom of speech or to petition the government. Indeed, both Mrs. Williams' admissions and Mr. Thornton's admissions make it clear that New Day's actions, including its lawsuit against the NNA, had no impact on the NNA's activism or First Amendment rights. Moreover, the governmental actors, particularly Trustee Judy Christian and the Union County Prosecutor, took up the NNA's cause and attacked New Day under the Fire Code, despite acknowledging in both Trustees meetings and the "No More Chickens"

15

advertisement that the Township did not have authority to regulate New Day.  Given these facts, the NNA's allegation that New Day acted under the color of state law and that Mrs. Williams' and the NNA's speech rights were chilled is not only implausible, it is pure fiction.

For all of these reasons, the NNA clearly has failed to state a claim under section 1983 and the Court should dismiss the complaint.

    4.    <u>The NNA's Complaint Fails to State a Claim under Section 1985(3)</u>

The Sixth Circuit clearly has held that activists such as Mrs. Williams and the NNA are not members of a "cognizable class" and therefore cannot state a claim under section 1985(3) for violation of their First Amendment rights when their activism results in their involvement in legal proceedings.  <u>Warner v. Greenbaum, Doll & McDonald</u>, 2004 U.S. App. LEXIS 13774 (6th Cir. June 23, 2004).  Thus, the Court should dismiss the NNA's section 1985(3) claim for failure to state a claim upon which relief can be granted.

    5.    <u>The NNA's Complaint Fails to State a Claim under Section 1988 or for Injunctive Relief</u>

Because the NNA has failed to state a claim for malicious prosecution or abuse of process or claims under section 1983 or 1985(3), the NNA cannot recover any relief under section 1988 or any injunctive relief.  Thus, the Court should dismiss those claims as well.

## III.    CONCLUSION

For all of the reasons stated herein, the NNA has failed to state a claim upon which relief can be granted.  Thus, the Court should grant Daybreak's and New Day's motion to dismiss pursuant to Rule 12(b)(6) or, in the alternative and after notice to the parties, grant Daybreak and New Day summary judgment so that New Day can put the NNA behind itself once and for all.

Respectfully submitted,


/s/ Kevin P. Braig
Kevin P. Braig (0061816)
Thomas P. Whelley (0010493)
DINSMORE & SHOHL, LLP
1100 Courthouse Plaza, SW
10 N. Ludlow Street
Dayton, Ohio 45402
(937) 449-2800
(937) 449-2836 (facsimile)
Email: kevin.braig@dinslaw.com
Email: thomas.whelley@dinslaw.com

Attorneys for Defendants New Day Farms, LLC
and Daybreak Foods, Inc.


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 6th day of July 2010, a copy of the foregoing "Defendants New Day Farms, LLC and Daybreak Foods, Inc. Motion to Dismiss Pursuant to Rule 12(b)(6) or in the Alternative for Summary Judgment Pursuant to Rule 56" was filed electronically with the Court.  Notice of this filing will be sent by operation of the Court's ECF system to all parties indicated on the electronic filing receipt.  Parties may also access this filing through the Court's system.


/s/ Kevin P. Braig
Attorney for Defendants New Day Farms, LLC
and Daybreak Foods, Inc.

17