IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PAMELA D. WILLIAMS, et al.,          Case No.: 2:10-CV-00394
                                               Judge James L. Graham
              Plaintiffs                   Mag. Judge Terrence P. Kemp

v.

NEW DAY FARMS, LLC, et al.,

              Defendants.


**OPINION AND ORDER GRANTING MOTION TO DISMISS
OF DEFENDANT CHRIS RODABAUGH**

Plaintiffs Pamela Williams (Williams) and Northwest Neighborhood Alliance (NNA) filed this action against Defendants New Day Farms, LLC (New Day), Daybreak Foods, Inc. (Daybreak) (collectively the "egg defendants"), Ohio Department of Agriculture (ODA) Livestock Inspector Chris Rodabaugh (Rodabaugh) and various John Does. Rodabaugh moves to dismiss the claims against him pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

This action arises out of a an earlier lawsuit filed by New Day against Williams, NNA and the York Township Board of Trustees, <u>New Day Farms, LLC v. Board of Trustees of York Township Ohio, et al.</u>, Case No. 2:08-cv-01107 (New Day I). Rodabaugh was not a party to this earlier action. In New Day I, New Day alleged that Williams and NNA conspired with public officials to pass an illegal fire safety code for the sole purpose of discriminating against New Day's egg farm and its Spanish-speaking employees. By order dated November 17, 2009 the court dismissed Williams and NNA from New Day I, finding that they were entitled to immunity under the *Noerr-Pennington* doctrine because they had simply exercised their first amendment

1

right to petition their government to oppose the construction of additional egg farms in their neighborhood. (New Day I doc. 57). The court further found that New Day had failed to state a claim against NNA or Williams under either 42 U.S.C. §1983 or §1985.  New Day's appeal of this court's decision in New Day I remains pending.

In the instant action (hereinafter referred to as New Day II), Williams and NNA allege that the egg defendants brought the earlier lawsuit solely as means to silence their opposition to egg farms.  They further allege that the egg defendants conspired with the ODA to infringe on their constitutional right of free speech and to petition by limiting their ability to speak out against the egg farms.

**I.     FACTS**

Plaintiff Pamela Williams (Williams) is a resident of York Township, Ohio. In late 2007, Williams learned that an entity called Hi-Q Egg Products, LLC (Hi-Q) wanted to create a new egg farm in York Township that would bring an additional (6) million chickens within two miles from Williams' home. Defendant New Day was already operating a poultry and egg farm in York Township. New Day is owned by Daybreak.  On March 5, 2008 Williams and two other neighbors, who were also concerned about the additional chickens, formed the plaintiff Northwest Neighborhood Alliance (NNA), an Ohio non-profit corporation, to speak out against the egg farms. Williams and NNA had concerns over the smell that would be caused by the additional chickens and their manure, the environmental impact that these chickens would have on her community, and the combined effect of these problems on the value of local properties. The goal of NNA was to stop the location of the six million additional chickens in such close proximity to Williams' and her neighbors' homes. In order to achieve this goal, NNA and

Williams wrote letters to the editor, spoke to elected representatives, attended township meetings, and printed and posted signs.

At the February 27, 2008 York Township trustees meeting, a trustee suggested that York Township adopt a fire safety code. The fire code was eventually adopted on June 2, 2008. Prior to the adoption of the fire code, New Day had applied for and been given a permit for renovations to their existing egg farm by the Ohio Department of Agriculture (ODA). However, after adoption of the code, New Day was served by the York Township Board of Trustees with a cease and desist letter informing New Day that it was in violation of the new fire code regulations. (New Day II doc. 14-10).  Although Williams and NNA supported the adoption of the code, they did not have any involvement in its drafting, enforcement or implementation. Williams and NNA did, however, continue to speak out publicly against New Day's proposed farm additions and the Hi-Q farm.

On August 7, 2008, New Day and Hi-Q held a public informational meeting for the purpose of answering questions from the public regarding the chickens, and the proposed or existing egg farm operations. Hi-Q rented one half of the event space for the meeting while NNA rented the other half for the same date. On their side of the room, NNA had posted signs stating "No More Chicken Factories."  When a crowd of nearly 400 people arrived, Hi-Q and NNA agreed to join their respective rental spaces into one large room. Egg defendants and Rodabaugh, along with the Executive Director of the ODA Livestock Environmental Permitting Program, Kevin Elder, attended this informational meeting. At that time[1], Rodabaugh was an ODA livestock inspector assigned to northwestern Ohio, including Union County. As part of his official duties, Rodabaugh conducted routine inspections of permitted facilities within his

---

[1] Rodabaugh retired from the ODA on December 31, 2010. (New Day II doc 39-1 ¶5).

territory, including New Day's egg farm. Rodabaugh was also tasked with responding to citizen complaints about the various farms. Between August 2008 and March of 2009, Rodabaugh and the ODA received over thirty (30) complaints related to New Day's egg farm operations and particularly the odor emanating therefrom.

Due to significant public interest in the Hi-Q egg farm proposal, the ODA scheduled a public informational meeting for December 17, 2008.  In an email dated November 3, 2008, sent by New Day supervisor Mark Myers to ODA Executive Director Elder, Myers stated that Rodabaugh had made plans to limit the participation of any egg farm opponents. The email stated, in pertinent part:

> Chris [Rodabaugh] also said Karen's Event Center in Marysville was the intended location, the same place Hi-Q had their session a few months ago. *Chris said the plan was to rent both large rooms and use only one to limit the opposition from posting their propaganda.* The Event Center has a third smaller room too that will hold about 25 people, just a nice size for a wedding rehearsal dinner or the like. I think the rental for the real small room is $100. If you do not want to add that to the ODA costs, let me know. *I will rent it myself to keep the opposition out. Tie up the whole place. . .* I am personal friends with Bob and Karen Paver, the owners of the Event Center. *I'll bet I can get them to agree to stop even signs being posted outside on their property too.*
> (New Day II doc. 1-4) (emphasis added).

Myers also forwarded the message to Rodabaugh. The following day, Rodabaugh emailed Myers and New Day General Manager Steve Bliesner informing them that the ODA December 17th informational meeting would be held at a school. Myers responded to Rodabaugh with concern, noting "that may be a problem since the rest of the school cannot be tied up for the opposition." Id. According to plaintiffs, these emails are evidence that Rodabaugh, Elder and the egg defendants had conspired to create a plan to silence the opposition like NNA and Williams. Plaintiffs also assert that Rodabaugh's conduct as an ODA inspector is evidence of a symbiotic

4

relationship that the state had with New Day. Plaintiffs allege that Rodabaugh purposefully ignored or downplayed complaints of odors coming from the egg farm. (New Day I doc. 76-8, Rodabaugh email stating that some odor complaints may be reactionary to Hi-Q's egg farm expansion; see also, Rodabaugh depo New Day I doc. 76, p. 157, admitting he was skeptical about the validity of at least one complaint).

Shortly after the email exchange between ODA and New Day, and before the December 17, 2008 meeting, New Day filed New Day I. After being dismissed from New Day I, NNA and Williams filed the present action against New Day, Daybreak, Chris Rodabaugh, and John Does 1-10 on May 3, 2010. In this action, plaintiffs bring claims against Rodabaugh pursuant to 42 U.S.C. §1983, §1985(3) and §1988 and seek both monetary and injunctive relief. Rodabaugh has moved to dismiss the claims against him pursuant to Fed. R. Civ. P. 12(b)(6). In response to this court's order of January 24, 2011 (New Day II doc. 34) the parties have also briefed the issue of whether Rodabaugh, who is sued in his official capacity, is entitled to Eleventh Amendment immunity. Finally, both parties have filed additional briefs to address the effect of Rodabaugh's retirement from the ODA on this case.

## II.     Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A

court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Iqbal, 129 S.Ct. at 1949-50; Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Twombly, 550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949; see also Twombly, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"); Papasan v. Allain, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." Twombly, 550 U.S. at 555 n.3. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S.Ct. at 1950.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S.Ct. at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Though "[s]pecific facts are not necessary," Erickson, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," Twombly, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to

relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim.  Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555-56.  This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'"  Iqbal, 129 S.Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.    Legal Analysis

The Eleventh Amendment to the U.S. Constitution states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.   As extended by the U.S. Supreme Court, the Eleventh Amendment "precludes suits in federal court against a state by its own citizens." See,  Raymond v. Moyer, 2006 U.S. Dist. LEXIS 41864 (citing Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267, 117 S. Ct. 2028 (1997).  The Eleventh Amendment may also shield state officials with immunity.  Id. (citing  Lee v. W. Reserve Psychiatric Habilitation Ctr., 747 F.2d 1062, 1065 (6th Cir. 1984)).

There are three situations, however, where the Eleventh Amendment does not apply. See, Carten v. Kent State Univ., 282 F.3d 391, 398 (6th Cir. 2002).  First, a state can waive its immunity by consenting to suit in federal court. Id.  Second, there is no immunity where the suit seeks prospective injunctive relief against state officials. Id (citing Ex Parte Young, 209 U.S. 123, 167, 52 L. Ed. 714, 28 S. Ct. 441 (1908)). Finally, Congress may "abrogate states' Eleventh

Amendment immunity if it acts pursuant to a valid grant of constitutional authority and expresses an unequivocal intent to abrogate the immunity." Id.  The parties agree that neither the first nor third exception applies, but disagree as to the applicability of the second exception, known as the Young Doctrine.

Defendant Rodabaugh, at all times relevant to this action, was employed by the State of Ohio, Department of Agriculture, and has been sued in his official capacity only. (New Day II doc. 1 ¶8). The plaintiff's claim against Rodabaugh for any monetary relief is therefore barred by the Eleventh Amendment.  See, Mattox v. City of Jefferson, No.: 1:04 CV 2257, 2007 U.S. Dist. LEXIS 1976 (N.D. Ohio Jan. 10, 2007).  Whether Plaintiff's claims against Rodabaugh in his official capacities for injunctive relief can survive the motion to dismiss is at issue in this case. In his reply brief on the issue of Eleventh Amendment Immunity, Rodabaugh argues that the plaintiffs lack standing to pursue their claim against him because any threat of injury is moot due to the fact that Rodabaugh retired from the ODA in December of 2010.  (New Day II doc 39-1 ¶5).

Article III of the U.S. Constitution, "empowers the judiciary to adjudicate only actual cases or controversies, and not to issue advisory opinions." In re Clean Earth Kentucky, LLC, 312 Fed. Appx. 718, 719 (6th Cir. 2008).  In order to satisfy Article III's standing requirements, the plaintiff must show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. V. Laidlaw Environmental Servs. (TOC) Inc., 528 U.S. 167, 180-81, 120 S. Ct. 693

8

(2000)(quoting Lujan v. Defenders of wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992)). In order to seek an injunction in federal court, a plaintiff "must show a non-speculative threat that 'he will again experience injury as a result' of the alleged wrongdoing." City of Los Angeles v. Lyons, 461 U.S. 95, 109, 103 S. Ct. 1660 (1983); see also, Fieger v. Ferry, 471 F. 3d 637, 643 (6th Cir. 2006)(to have standing, a plaintiff must "demonstrate actual present harm or the significant possibility of future harm").

In their complaint, plaintiffs assert that they have suffered an actual injury in fact by virtue of Rodabaugh's alleged conspiracy with New Day to silence egg farm opponents. Although the complaint alleges that ODA Director Kevin Elder was also a part of the alleged conspiracy, the complaint only seeks redress from Rodabaugh. Specifically, in its request for relief, the complaint specifically requests a permanent injunction enjoining "Rodabaugh's use of the ODA and its position, to infringe on an individual or organization's civil rights." (New Day doc. 1 ¶ 32).  Thus the only remedy sought by plaintiffs is an injunction against Rodabaugh who is now retired from the ODA.

Although plaintiffs argue in their memorandum in opposition that Rodabaugh's actions were essentially those of the ODA and will therefore be capable of repetition, no where in the complaint is such an allegation made.[2]  There is no allegation that the ODA has a policy of discriminating against egg farm opponents or that all investigators and employees of the ODA are in a conspiracy with New Day to silence egg farm opponents. See eg., Lyons, 461 U.S. at 105-06 ("In order to establish an actual controversy in this case, Lyons would have had not only

---

[2] Although plaintiffs assert that because the complaint named Rodabaugh in his official capacity, it must be treated as a complaint against the ODA itself.  However, "official capacity actions for prospective relief are not treated as actions against the state." Sutton v. Evans, 918 F. 2d 654 (6th Cir. 1990).

9

to allege that he would have another encounter with the police but also . . . that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter ..."). Moreover, because Rodabaugh is no longer employed by the ODA, any injunction prohibiting him from using his position at the ODA to silence plaintiffs would be useless. See, Semla v. Snyder, No. 03-cv-00015-JPG , 2006 U.S. Dist. LEXIS 33028 (S.D Ill. May 24, 2006) (as prison officials who were alleged to have violated plaintiff's constitutional rights were no longer in their former positions, they were not currently in a position to injure him again or prevent others from injuring him).  Thus, plaintiffs lack standing to pursue their claim against Rodabaugh and this court lacks jurisdiction over the complaint against him.  Accordingly, Rodabaugh's motion to dismiss is granted for lack of standing.

      IT IS SO ORDERED.

                                          S/ James L. Graham
                                          James L. Graham
                                          UNITED STATES DISTRICT COURT

Date: Mar. 31, 2011